# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1893.

## Jones v. The State.

### *Indictment for Murder.*

1. *Evidence; declarations of defendant.*—On a trial under an indictment for murder committed by shooting with a gun, where the defense interposed is that defendant did not intend to shoot, and did not know the gun was loaded, the inquiry is as to the state or condition of defendant's mind at the time of the shooting; and a declaration made by defendant a short time prior to the shooting, that the gun was not loaded, is admissible in evidence, as tending to elucidate or illustrate the condition of defendant's mind.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN R. TYSON.

The appellant was indicted, tried and convicted for the murder of Tom Hartsfield, and was sentenced to suffer death.

The testimony for the State tended to show that while the defendant, as an employé, was on one of the cars of the Alabama Midland Railway Company, at the fertilizer works in Troy, Alabama, the deceased being in company with some other negroes, one of the negroes, Walter Hines by name, said, "Look yonder at the buzzards," referring to the defendant; that upon this statement by the said Hines, the defendant shot at said Hines with a Winchester rifle; that the ball from the rifle missed the said Hines and struck Hartsfield, who was standing a short distance behind Hines, and from the effects of the shot he died instantly.

[Jones v. The State.]

The defense set up was, that there was no intent to shoot, on the part of the defendant prior to, and at the time of, the shooting, and that he did not know, at the time he pointed the gun at said Hines, in the direction of the deceased, that it was loaded. The testimony for the defendant tended to substantiate this defense.

One of the witnesses introduced for the defendant testified that he was on the train that was going to Troy the morning of the shooting, and that one Friday Morrison, who sat opposite him in the coach had the Winchester rifle with which the shooting was afterwards done ; that said Morrison went to sleep and the gun fell down ; that the witness called to George Jones, the defendant, and told him about the rifle falling down, whereupon the defendant replied that there was no danger in it, that it was not loaded. The solicitor objected to this testimony of the witness Alexander, and moved to exclude it. The court sustained the objection, excluded the testimony, and the defendant duly excepted. This is the only ruling of the trial court which is reviewed on this appeal.

D. A. Baker, for appellant.

Wm. L. Martin, Attorney-General, for the State.

PER CURIAM.—We are of opinion that the declaration of the prisoner to the witness, Alexander, that the gun was not loaded, and there was no danger in it, was admissible in evidence, and should not have been excluded from the jury. The degree of the guilt of the prisoner depended on the inquiry, whether, at the time of the homicide, he believed the gun was unloaded, and the reasonableness of the belief. The declaration was uttered a few hours before the homicide, on the train on which the prisoner was an employé, in the course of continuous travel to the station at which the homicide occurred. It was a natural, instinctive response to the direction of his attention by the witness to the falling of the gun, intending to allay the apprehension of danger, he reasonably supposed had been excited in the mind of the witness. The declaration may not, strictly speaking, form part of the *res gestae*. But it is connected with, and can not be disconnected from, the inquiry,

[Jones v. The State.]

what was the state of the prisoner's mind at the time of the homicide—did he then believe the gun was un-loaded? The evidence without conflict, shows that he saw the gun unloaded on the night before, and did not know, and had no opportunity of knowing, that it was subsequently reloaded, when the declaration was uttered. The truth and spontaniety of the declaration are appar-ent, and it is corroboratory of the evidence of the pris-oner that at the time of the homicide he did not believe the gun was loaded. We have no purpose to relax the general rule, that declarations made by a defendant in his own favor, not forming part of the *res gestae*, self-serving declarations, as they are termed, are inadmissi-ble as evidence for him. But when, as in the present case, the inquiry is as to the state or condition of the mind of the defendant, his declarations uttered instinct-ively, with no purpose of producing a particular effect in the future, and which have a tendency to elucidate or illustrate his mental condition, are admissible. The declaration becomes a fact, which the jury must con-sider in connection with the other evidence, giving to it such weight as they may deem it entitled to receive. If, as there is evidence tending to show, after the utter-ance of the declaration, and before the homicide, the prisoner ascertained and knew the gun was loaded, the declaration loses all significance and becomes wholly immaterial. Upon this point, the evidence was not free from conflict. If the jury were not satisfied beyond a reasonable doubt, that the prisoner had, before the homicide, ascertained, or had reason to believe, the gun was loaded, the declaration is a fact, which may aid the jury in determining the mental condition of the prisoner at the time of the homicide.

Let the judgment be reversed and the cause remanded, the prisoner remaining in custody, until discharged by due course of law.

Reversed and remanded.